Robert Salgado (SBN 297391)
DAVIS & NORRIS, LLP
5755 Oberlin Dr. Suite 301
San Diego, CA 92121
Telephone: 205.930.9900
Facsimile: 205.930.9989
Email: rsalgado@davisnorris.com

Dargan Ware (SBN 329215)
Andrew Wheeler-Berliner (SBN 290495)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone; 205.930.9900
dware@davisnorris.com
jnorris@davisnorris.com
andrew@davisnorris,com

Andrew J. Schwaba (NC SBN 36455)
212 South Tryon Street
Suite 1725
Charlotte, NC 28281
Telephone: 704.370.0220
Facsimile: 704.370.0210
aschwaba@schwabalaw.com

R. Kevin Fisher (SBN 131455)
2121 Park Drive
Los Angeles, CA 90026
Telephone: 310.862.1220
Facsimile: 310.388.0805
rkf@fkslaw.net

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

CLARENCE CARTER, MEL COMES, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

HARBOR FREIGHT TOOLS USA, INC.

Defendant.

Case No.: 2:20-cv-05451-DMG-KK

**OMNIBUS FIRST AMENDED CLASS ACTION COMPLAINT**

October 2, 2020

---

DUANE THOMAS, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

HARBOR FREIGHT TOOLS USA, INC.,

Defendant.

Case No. 2:20-cv-05898-DMG-KK

---

MARKEITH MITCHELL, on behalf of himself and all others similarly situated,

Plaintiff,

HARBOR FREIGHT TOOLS USA, INC.,

Defendant.

Case No. 2:20-cv-07906-DMG-KK

## OMNIBUS FIRST AMENDED CLASS ACTION COMPLAINT

1. This complaint brings claims for breach of warranty, negligence, and products liability against Harbor Freight Tools USA, Inc. (Harbor Freight) relating to jack stands sold by Defendant. These stands were manufactured with a defect that made them inherently dangerous. This complaint unites three class actions that Plaintiffs intend to ask the court to consolidate. These three actions cover three separate classes of people. Some individuals purchased jack stands that have been recalled, but Defendant has failed to make many of those who bought them whole. The second class of Plaintiffs suffered property damage to their cars, homes, or other personal property besides the jack stands themselves when the stands failed. Finally, the third group of people bought different jack stands that suffer from a similar defect, but which the Defendant has not recalled.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Mel Comes is an adult resident citizen of Los Angeles County, California.

3. Plaintiff Clarence Carter is an adult resident citizen of Douglas County, Georgia.

4. Plaintiff Duane Thomas is an adult resident citizen of Guilford County, North Carolina.

5. Plaintiff Markeith Mitchell is an adult resident citizen of Laurens County, Georgia.

6. Defendant Harbor Freight is a corporation existing under the laws of Delaware with its principal place of business in Calabasas, California. It is a corporate citizen of Delaware and California.

7. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the claims in this case form part of a class action in which the amount in controversy exceeds the sum of $5,000,000.00 and the members of the class include citizens of different states than some or all of the defendants.

8. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because the Defendant resides in this district, having its principal place of business in Calabasas, California.

## FACTUAL BACKGROUND

9. Harbor Freight is a retail discount tool seller and distributor. It sells merchandise over the internet and operates roughly 1000 stores nationwide from its headquarters located at 26565 Agoura Road in Calabasas, California.

10. Harbor Freight sells automotive jack stands under the inhouse brand name "Pittsburgh Automotive," which are manufactured in China. The jack stands come in a variety of sizes and purported weight load limits, including three-ton and six-ton varieties. The jack stands consist of an aluminum or steel base that hold a post with teeth on one side. The teeth allow the jack stands to be raised and lowered to several different elevations using a handle with a stopper known as a pawl. Once the stand is set to the desired elevation, the user lowers the handle to engage the pawl and can tighten a screw on the side of the base into a groove running along the side of the post that purportedly provides further assurance that the jack stand will remain at the desired level.

11. Jack stands are meant to secure automobiles in an elevated position while the person working on the car makes repairs underneath the automobile. The person repairing the car is typically positioned partially or wholly beneath the automobile and relies on the jack stand to keep from being crushed or injured by the car's weight. The strength and security of the jack stand is paramount to safety.

12. Harbor Freight's "Pittsburgh Automotive" jack stands are defective, hazardous, and unsafe due to inconsistencies in the manufacturing, reportedly caused by aging in the tooling. The ratchet teeth are manufactured to an insufficient depth, causing the locking pawl to fail to fully engage and hold the jack stand securely at the desired level. This defect makes the jack stands inherently dangerous because they can collapse under a load, causing serious danger to anyone under the vehicle as well as nearby individuals and property. In addition, the three-ton jack stands had inconsistent location indexing of the pawl armature hole.

13. Harbor Freight has admitted that while under load, and with a shift in weight, the jack stands' pawl will disengage from the extension lifting post, allowing the stand to drop suddenly. On March 20, 2020, Harbor Freight advised the National Highway Transportation Safety Administration (NHTSA) that the six-ton Pittsburgh Automotive jack stands would be recalled due to the ratchet teeth manufactured to an insufficient depth. These first recalled jack stands were six-ton steel jack stands manufactured under product ID 61197

14. In May of 2020, Harbor Freight issued an additional recall on three-ton steel jack stands with product ID numbers 56371 and 61196. Harbor Freight advised that the product quality was compromised by an aging of the tooling and inconsistent location indexing of the pawl armature hole.

15. Harbor Freight initially attempted to replace some of the recalled jack stands with different three-ton jack stands with product ID numbers 56373. These stands were also defective, as Harbor Freight CEO Eric Smidt admitted in an email:

> "I'm disappointed and embarrassed because we've identified a welding defect in a small number of the Pittsburg 3-ton steel jack stands (SKU 56373) that replaced the recalled jack stands," Eric Smidt, the company's CEO and founder, wrote in a message to consumers.

Kelly Tyko, "Harbor Freight recalling more jack stands after 'welding defect' found in replacement stands," USA TODAY, Jul. 7, 2020, available at https://www.usatoday.com/story/money/2020/07/07/harbor-freight-jack-stands-recall/5393897002/ (last accessed September 30, 2020).

16. The same defects found in the recalled jack stands are also found in other Harbor Freight "Pittsburgh Automotive" jack stands, including three-ton aluminum jack stands with product ID numbers 56357, 61627, and 91760.

17. Defendant Harbor Freight knew about the latent defect in all of these jack stands, as consumers had reported these failures long before Plaintiffs suffered property damage or injury.

Harbor Freight failed to disclose this knowledge to Plaintiffs and other potential members of the class. Had this defect been properly disclosed, it would have made the jack stands virtually worthless.

**FACTS CONCERNING THE INDIVIDUAL PLAINTIFFS**

18. Plaintiff Clarence Carter purchased the three-ton jack stands, part no. 56371, from the Harbor Freight store in Douglasville, Georgia with the intent to use the stands to work on his personal vehicles.

19. In late 2018 or early 2019, Mr. Carter was using the stands to hold up his 2003 Cadillac CTS to bleed the brakes. The defective stands collapsed, and the Cadillac fell, causing damage to the frame of the vehicle. Thankfully, Mr. Carter was not injured in the incident, but his vehicle was seriously damaged, and he could no longer use the jack stands. The damage to Mr. Carter's vehicle was caused by the manufacturing defect in the Harbor Freight jack stands.

20. Mr. Carter attempted to determine whether he could return the jack stands to the Harbor Freight store. He was told that the jack stands were no longer under warranty and could not be returned. Mr. Carter had gotten no value out of the stands, and he discarded them because they were unsafe.

21. Plaintiff Mel Comes purchased the three-ton jack stands, part no. 61196, from a Harbor Freight store in Lancaster, California, with the intent to use the stands to work on his personal vehicles.

22. Approximately six months before the filing of this complaint, Mr. Comes placed his 2007 Honda Civic hybrid on the jack stands to replace an engine cover on the bottom of the vehicle. After placing it on the jack stands, Mr. Comes came out from under the car, and it fell, damaging the frame below the driver's side door. Thankfully, Mr. Comes was not injured in the incident, but his vehicle was seriously damaged, and he could no longer use the jack stands. The damage to Mr. Comes's vehicle was caused by the manufacturing defect in the Harbor Freight jack stands.

23. Mr. Comes attempted to determine whether he could return the jack stands to the Harbor Freight store. He was told that the jack stands were no longer under warranty and could not be returned. Mr. Comes had gotten no value out of the stands and he discarded them because they were unsafe.

24. In 2018, Plaintiff Duane Thomas purchased a Pittsburgh Automotive three-ton aluminum jack stand, part no. 61627, from a Harbor Freight store in Greensboro, North Carolina, with the intent to use the stands to work on his personal vehicles.

25. On July 8, 2018, Mr. Thomas placed his personal vehicle on this jack stand. The jack stand failed, pinning Mr. Thomas underneath his vehicle. This failure was caused by the manufacturing defect in the Harbor Freight jack stands.

26. In July and October of 2018, Plaintiff Thomas provided notice to the Defendant that while using their jack stand, the jack stand failed and was defective. Plaintiff Thomas received no response from the Defendant.

27. Plaintiff Markeith Mitchell purchased the six-ton jack stand, part no. 61197, from a Harbor Freight store in Macon, Georgia, with the intent to use the stands to work on his personal vehicles.

28. Mr. Mitchell used the jack stands on a couple of occasions and experienced a slip of the ratcheting mechanism while lifting his truck. Luckily, Mr. Mitchell had safety mechanisms in place to catch the truck before it slammed to the ground. He discontinued use of the jack stands because he felt they were too dangerous.

29. Mr. Mitchell attempted to return the jack stands to the Macon Harbor Freight store. A customer representative told him that the jack stands were no longer under warranty and could not be returned. Mr. Mitchell had gotten no value out of the stands, and he discarded them because they were unsafe.

30. All of the named plaintiffs experienced the failure of the jack stands within the applicable limitations period.

**CLASS ALLEGATIONS**

31. This nationwide class action is maintainable against the defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs Mel Comes and Clarence Carter seek to represent the following class against Defendant:

> All consumers nationwide who purchased the recalled jack stands (items numbered 56371, 61196, and 61197) that were sold by Defendant for household use and suffered property damage as a result of the failure of those jack stands. Persons who suffered personal injury caused by the jack stands, as well as all employees of the Court and plaintiffs' counsel are excluded.

This class will be referred to in the remainder of this complaint as "the property damage class."

32. Also pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Duane Thomas seeks to represent the following nationwide class against Defendant:

> All consumers nationwide who purchased defective jack stands that have not been recalled by Harbor Freight as of the filing of this complaint, including but not limited to products numbered 56357, 61627, and 91760, who have not received a full refund for their defective product and/or suffered property damage caused by these jack stands. Claims for personal injury caused by the jack stands, as well as all employees of the Court and plaintiffs' counsel are excluded.

This class will be referred to in the remainder of this complaint as "the aluminum jack stand class."

33. Also pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Markeith Mitchell seeks to represent the following nationwide class against Defendant:

> All consumers nationwide who purchased the recalled jack stands (items numbered 56371, 61196, and 61197), who have not received a full refund for their defective product. Claims for personal injury caused by the jack stands, as well as all employees of the Court and plaintiffs' counsel are excluded. Persons who suffered property damage caused by the jack stands are also excluded from this class and are instead members of the property damage class defined in Paragraph. 28.

This class will be referred to in the remainder of this complaint as "the recalled jack stand class."

34. Also pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Mel Comes seeks to represent the following statewide California subclass against Defendant:

> All consumers who are residents of California who purchased any of the defective Harbor Freight jack stands, including but not limited to items numbered 56371, 66196, 61197, 56357, 61627, and 91760, who have not received a full refund for their defective product or suffered property damage caused by the jack stands. Claims for personal injury caused by the jack stands, as well as all employees of the Court and plaintiffs' counsel are excluded.

This subclass will be referred to in the remainder of this complaint as "the California subclass."

35. Pursuant to Rule 23(a)(1), the property damage class is so numerous that joinder of all class members is impracticable. Harbor Freight sold at least 1.7 million jack stands in the United States. A significant percentage of these stands failed and caused property damage. The number of purchasers of these jack stands who suffered such damage is far too large for practicable joinder in a single suit.

36. Pursuant to Rule 23(a)(1), the aluminum jack stand class is so numerous that joinder of all class members is impracticable. Harbor Freight sold at least XX aluminum jack stands in the United States. Many of them have not received a full refund for their defective product. The number of members of this class is far too large for practicable joinder in a single suit.

37. Pursuant to Rule 23(a)(1), the recalled jack stand class is so numerous that joinder of all class members is impracticable. Harbor Freight sold at least 1.7 million of the jack stands that have been recalled in the United States. Many of them have not received a full refund for their defective product. The number of members of this class is far too large for practicable joinder in a single suit.

38. Pursuant to Rule 23(a)(1), the California subclass is so numerous that joinder of all class members is impracticable. California is the largest state in the nation, with almost 40 million residents. Harbor Freight is headquartered in California and has more than 110 stores in the state. A significant percentage of the 1.7 million jack stands sold by Defendant in the United States were sold in California. The number of members of this subclass is far too large for practicable joinder in a single suit.

39. Pursuant to Rule 23(a)(2) and 23(b)(3), this case with respect to each of the three classes and the California subclass is predominated by questions of law and fact common to all class members. The common questions include:

a) whether the jack stands sold and distributed by Defendant possessed a material defect at the time of sale;

b) whether the jack stands were manufactured with ratchet teeth at an insufficient depth;

c) whether Defendant's practices breached the implied warranty of merchantability;

d) whether Defendant's sale of the defective jack stands constitutes negligence;

e) whether Plaintiffs and members of the class are entitled to injunctive and equitable relief, and, if so the nature of such relief; and

f) whether Plaintiffs and members of the class are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages.

40. Pursuant to Rule 23(a)(3), the claims of the named plaintiff representing each class or subclass are typical of those of that class or subclass. Like Plaintiffs Comes and Carter, every member of the property damage subclass is a consumer that purchased the recalled jack stands for household use and suffered property damage as a result of their failure. Like Plaintiff Thomas, every member of the aluminum jack stand class purchased an aluminum jack stand and has failed to receive a refund for their defective product or suffered property damage as a result of its failure. Like Plaintiff Mitchell, every member of the recalled jack stand class is a consumer who purchased the recalled jack stands for household use and has failed to receive a refund for their defective product. Like Plaintiff Comes, ever member of the California subclass is a California consumer who purchased the jack stands at issue and failed to receive a full refund for their defective product or suffered property damage as a result of their failure.

41. Pursuant to Rule 23(a)(4), the named plaintiffs will fairly and adequately represent the interests of each of the three classes and the California subclass. The named plaintiffs have no interests

adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the classes.

42.    Each class in this complaint is certifiable under Rules 23(b)(2) and 23(b)(3). Certification is appropriate under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

43.    Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant. Thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each person harmed by Defendant's conduct would also strain the court system and increase delay, expense, and the potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**COUNT I: STRICT LIABILITY – MANUFACTURING DEFECT**

44.    Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as if fully set forth herein.

45.    At all times herein mentioned, Defendant sold, tested, and marketed the jack stands at issue. Plaintiffs purchased the jack stands as they were manufactured, without modification from any other party.

46. The jack stands had a manufacturing defect that caused the ratchet teeth on the jack stand lifting extension post to inconsistently engage the pawl to a significant depth.

47. At all times since they were manufactured, the defect made the jack stands unreasonably dangerous to human life and property.

48. Plaintiffs Mitchell and Thomas and the aluminum jack stand and jack stand recall classes suffered damages because they purchased jack stands that were unreasonably dangerous and were unusable in their defective condition.

49. Plaintiffs Comes, Thomas, and Carter and the property damage class suffered property damage because these unreasonably dangerous jack stands failed and caused the damage.

**COUNT II: NEGLIGENCE**

50. Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as if fully set forth herein.

51. At all times, Defendant had a duty to use reasonable care in selecting, marketing, and selling the items in its stores.

52. Defendant breached this duty by allowing the defectively manufactured jack stands to be placed in its stores, and by marketing and selling the defectively manufactured jack stands.

53. Defendant's breach caused damage to Plaintiffs and members of the jack stand recall and aluminum jack stand class, because they purchased worthless, dangerous, defectively manufactured jack stands from the Defendant.

54. Defendant's breach also caused damage to Plaintiffs and the property damage class because these jack stands failed, causing Plaintiffs and the class to suffer damage to their personal property.

**COUNT III: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

55. Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as if fully set forth herein.

56. Defendant controlled the marketing and sale of the jack stands at issue, and placed them in the stream of commerce.

57. By offering the jack stands for sale, Defendant impliedly warranted to Plaintiffs and the class that they were of merchantable quality, safe, and fit for their intended purpose.

58. The jack stands were not of merchantable quality and could not safely be used for their intended purpose. The defects that caused this to be the case were not disclosed to Plaintiffs and the class.

59. Plaintiffs and the class purchased and used the jack stands in reliance upon the implied warranties of the defendant.

60. Plaintiffs and the members of all classes suffered damage because they purchased worthless jack stands.

61. Plaintiffs Comes, Carter, and Thomas and the members of the property damage class suffered additional damages when the jack stands failed and caused damage to their real or personal property.

**COUNT IV: VIOLATION OF THE SONG-BEVERLY WARRANTY ACT**

62. Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as if fully set forth herein.

63. Plaintiff Mel Comes brings this claim on behalf of the California subclass.

64. Under the Song-Beverly Consumer Warranty Act, "Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. Such warranty shall not be waived unless the provisions of the act "are strictly complied with." Cal. Civ. Code § 1792.3.

65. The jack stands at issue are "consumer goods" under California law, and Plaintiff Comes and all members of the California subclass are "buyers." Cal. Civ. Code § 1791(a)-(b).

66. The above-described defect in the jack-stands existed at the time of manufacture and at all subsequent times. Thus, the defects existed within the warranty period.

67. Harbor Freight's failure to remedy the defect and to fully compensate Plaintiff Comes and the class for their damages constitute a violation of the Song-Beverly Warranty Act.

68. Plaintiff and the class are entitled to damages resulting from Defendant's failure to comply with its obligations under the Act.

69. Plaintiff and the class are entitled, in addition to other amounts recovered, to a civil penalty of up to two times the amount of actual damages because Defendant willfully failed to comply with its responsibilities under the Act.

70. Plaintiff and the class are entitled under the Warranty Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

**JURY DEMAND**

Plaintiff demands trial by struck jury on all issues so triable.

**PRAYER FOR RELIEF**

Plaintiff respectfully prays for the following relief,

(A) An order certifying the above-described nationwide class pursuant to Federal Rule of Civil Procedure 23, with appropriate notice to absent class members;

(B) An order appointing Plaintiff's counsel as class counsel for the nationwide class;

(C) After a jury trial, an award of damages based on those suffered by Plaintiff and the class in purchasing the worthless jack stands, as well as the property damage suffered;

(D) After a jury trial, an award of costs, including reasonable attorneys' fees, pursuant to the Song-Beverly Act; and

(E) Any further or different relief the Court may find appropriate.

Dated this 2d day of October, 2020.

**FISHER & KREKORIAN**

s/ R. Kevin Fisher
R. Kevin Fisher
California SBN 131455
P.O. Box 890
Santa Monica, CA 90406
(310) 862-1220 (telephone)
(310) 388-0805 (facsimile)

**SCHWABA LAW FIRM**

s/ Andrew J. Schwaba
Andrew J. Schwaba
NC Bar No.: 36455
212 North Tryon Street
Suite 1725
Charlotte, NC 28281
(704) 370-0220
(704) 370-0210 (fax)
aschwaba@schwabalaw.com